[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE THE VERDICT
The plaintiff, acting pro se, instituted the present action against Mildred Rudnick and Gerald Rudnick alleging that various actions of the defendants caused water to flow onto the plaintiff's property, causing property damage and emotional distress. The plaintiff lives at 87 Stiles Street in Milford, the defendant, Mildred Rudnick, lives at 97 Stiles Street, and the defendant, Gerald Rudnick, now lives at 111 Stiles Street, all in the City of Milford. The case was tried before a jury, which returned a verdict in favor of the defendants and the plaintiff has now moved to set aside that verdict.
The plaintiff asserts that the court was biased in its rulings in favor of the defendants and makes various claims as hereinafter discussed. The plaintiff claims that the court failed to allow evidence by the plaintiff where it should have been allowed. The plaintiff wished to call as witnesses, the assistant state's attorney for Milford and a member of the Family Relations Division, with respect to a matter arising out of a criminal prosecution of the plaintiff regarding what the plaintiff claimed to be brandishing of a gun. According to the plaintiff's claim, the defendants made a complaint with respect to the plaintiff resulting in a criminal prosecution of the plaintiff. The plaintiff claimed that he was required to undergo a psychiatric examination and, eventually acting pro se, defended the criminal action resulting in a verdict in his favor. The plaintiff claims that the conduct of the defendants were wrongful and that he CT Page 1331-UUU suffered emotional distress as a result of the criminal prosecution. The plaintiff indicated he wished to question the assistant state's attorney with respect to the criminal prosecution and to wished to likewise question the Family Relations officer to whom the criminal matter was referred to see if the disputes between the parties could be resolved. The basis upon which the complaint in the civil action was tried involved claims of water going from the defendant Mildred Rudnick's property to the plaintiff's property. There was no claim alleged in the complaint relating to any wrongful conduct by the defendants with respect to the criminal prosecution and the plaintiff's assertion that a claim of mental distress arising from the water flowing onto his property is sufficient to encompass claims involving wrongful conduct with respect to the criminal prosecution is unfounded and unwarranted.
The plaintiff claims that the court allowed each of the two defendants to have four preemptory challenges while allowing the plaintiff to have four challenges. The court believes that there was not a unity of interest sufficient to combine the challenges of both defendants and limit them to a total of four. At any rate, the jury which was impanelled and which decided the case was selected when the defendants had utilized, collectively, one challenge. Accordingly, his claims could have had no effect upon the resulting verdict.
The plaintiff also alleges that the health status of the plaintiff was not allowed to be submitted into evidence. The court did indicate that it would allow the plaintiff to testify that it was suffering from certain medical conditions because such conditions may have affected the claim of the plaintiff regarding emotional distress arising out of his claim that water flowed onto his property. However, the plaintiff never testified with respect to those medical conditions. The court, however, would not allow the plaintiff to testify as to the results of the research he personally conducted in the medical literature at the Yale Medical School. The plaintiff has no medical background or training and, accordingly, could not testify as an expert regarding the use of medical literature affecting any opinion that he might hold because his opinion on medical issues was not admissible.
The plaintiff also claims that the court did not allow portions of the public health code and building code to be introduced into evidence. Such claims were made in the complaint CT Page 1331-VVV against Gerald Rudnick who did not own the property upon which the plaintiff claims were the cause of his problems. At any rate, the substance of those ordinances were revealed to the jury in examination of various witnesses and there was insufficient foundation for the admission of the ordinances or codes themselves. In addition, while the complaint made reference to violations, there was no claim of damage arising as a result thereof.
The plaintiff also claims that the court gave the defendants latitude in their presentation of evidence, that the court overruled the various objections by the plaintiff and allowed testimony by the defendants not related to the complaint to be entered into evidence. The plaintiff has not designated any specific rulings that would be encompassed within such claims other than the various rulings discussed in this memorandum. Suffice it to say that the court ruled upon objections made by all parties at the time those objections were made and the court believes the rulings to be correct.
The plaintiff also claims that the court did not grant the plaintiff's motion filed near the end of the trial to allow the jurors to travel to the location in question to observe the conditions there existing. There were literally hundreds of photographs introduced into evidence during the course of the trial and considerable testimony was introduced concerning the nature of the various conditions that existed on all properties. The court does not believe that a view of the site by the jurors would have produced any evidence that was not already before the jurors by virtue of the photographs and testimony and that such a view would result in unnecessary delay without materially advancing the course of the trial.
The plaintiff also claims that the court allowed the defendants' attorney to sit with the jurors when the plaintiff was giving his closing arguments and allowing interruptions by the defense attorneys during closing arguments. The court did not allow any attorney to sit with the jurors and, during the course of the trial, would allow the attorneys for the defendants to place themselves in a position, outside of the jury box, where they could view certain demonstrative evidence being shown by the plaintiff to the jury.
The plaintiff also claims that the trial was "a complete bogus" which the court interprets to mean the plaintiff was CT Page 1331-WWW dissatisfied with the results of the jury verdict.
The plaintiff also claims that the expert witness produced by the defendant, Mr. Dalphin, did not prove any of his findings and was a highly suspect witness for the defendants. Following the testimony of Mr. Dalphin, the plaintiff did file a motion to strike the testimony of Mr. Dalphin. Mr. Dalphin was a professor at the University of Hartford, held an engineering degree, and was qualified to testify as an expert witness on the subject matter at issue. Mr. Dalphin testified that he had inspected the property of the defendant Mildred Rudnick and made various tests of certain drainage facilities on the property. He testified that there was a curtain drain next to the swimming pool which served to bring water away from the pool to the rear of the yard in a wooded area. He also testified that foundation drains were placed on the property by Mrs. Rudnick and that gutter drains were also placed upon the property. He testified that none of these conditions served to bring any more water to the plaintiff's property than would have been the case in the absence of such conditions and, indeed, albeit to a minor degree, the systems served to take water away from the plaintiff's property. Mr. Dalphin was a qualified expert witness who gave admissible testimony concerning certain matters at issue. No objection was made to the testimony of Mr. Dalphin at the time it was introduced. The claim of the plaintiff that Mr. Dalphin did not produce admissible evidence because Mr. Dalphin did not record how much water he utilized in performing the various tests is an insufficient basis to strike the testimony and is, at most, a matter that went to the weight of his testimony.
The plaintiff produced a Mr. Edward Liskiewicz as a witness who was a building inspector for the Town of Milford. Mr. Liskiewicz testified that he received a complaint from the plaintiff; that he went to the defendant's property to investigate that complaint. He then went to the plaintiff' s property and told the plaintiff that the plaintiff's complaints were unfounded and that the plaintiff then abruptly told him to leave the property. The plaintiff claims that the verdict should be set aside because Mr. Liskiewicz told the defendant, Mildred Rudnick, to remove the water from her swimming pool which Mr. Liskiewicz denied. The claim of the plaintiff resolves itself into a claim that the jury should not have believed the testimony of Mr. Liskiewicz.
The plaintiff also claims the verdict should be set aside CT Page 1331-XXX because Mr. Metone, of the Milford Health Department, did not check for health hazards. Mr. Metone was produced as a witness by the plaintiff who testified that he had been employed for many years by the Milford Health Department; that a complaint was delivered to him that mosquito larvae was growing in the pool of Mildred Rudnick. He went to the property to investigate the claim and determined the claim was without foundation. Again, the claim of the plaintiff resolves itself into a claim that the jury should not have believed the testimony of Mr. Metone.
The plaintiff also claims that Mr. Werner of the Milford Health Department, who was a witness produced by the plaintiff, did not follow up on a report given to him by Mr. Metone but simply took it at face value. Again, the claim that the jury should not have believed the testimony of Mr. Werner, or that Mr. Werner should have done something else, is not a ground for setting the verdict aside.
The defendants also moved for a directed verdict at the close of the plaintiff's case, upon which the court reserved decision. As to the defendant, Gerald Rudnick, the plaintiff claimed that Mr. Rudnick drained the pool in 1986 or 1987 and that he was uninvolved in the construction of a piping system. These claims were denied by Mr. Rudnick and, at any rate, were beyond the period of the statute of limitations which was pleaded as a special defense by the defendants. The plaintiff also claimed that Mr. Rudnick parked vehicles on his mother's property, on occasion, and that the parking of those vehicles increased the water that flowed onto the plaintiff's property. While such matters involve claims by the plaintiff, there was no testimony that such action by Mr. Rudnick increased any water that flowed onto the property of the plaintiff and, accordingly, there was insufficient evidence to sustained a verdict against him.
As to the defendant, Mildred Rudnick, the plaintiff claimed that the water was coming from her swimming pool as a result of draining that pool. The defendant testified that the pool itself was not, in fact, drained, although on occasion prior to 1986, some water may have been drained from the cover of the pool which did not cause any water to flow on the defendant's property. The plaintiff's claim against Mrs. Rudnick is largely based upon his claim that the water coming onto his property had to be coming from her pool because there was no place else for the water to come from. There was considerable testimony and photographs establishing that the plaintiff's property is located downhill CT Page 1331-YYY from Mrs. Rudnick's property and from Mr. Rudnick's property and that the property located further downhill from the plaintiff s property is a wetland area. The defendant Mildred Rudnick also testified as to the water conditions in her cellar which necessitated the installation of foundation and gutter drains. The plaintiff introduced into evidence various photographs showing apparent damage to the structure of his house and also conditions claimed to be caused by water to the sidewalk of the plaintiff's home. However, no evidence of the cost to repair such damages was submitted, nor was there any other basis upon which the jury could award damages to the plaintiff other than nominal damages.
The plaintiff, at the argument of the motion to set aside the verdict, asserted, for the first time, that the court should not have presided over the trial because of a prior ruling by the court. In January of 1994, the court granted a motion to strike the plaintiff's complaint against The W.R. Grieger Co., Inc. (Grieger). At that time, the court noted that because the plaintiff was appearing pro se, some latitude in pleadings might be appropriate, but, unless the court was willing to make unwarranted assumptions, the complaint failed to allege that Grieger did anything wrong. The court specifically noted the plaintiff's right to file a new pleading pursuant to Practice Book § 157. The plaintiff failed to file a new pleading after having been afforded the right to do so. Judgment was entered in favor of Grieger and the action of the court was upheld on appeal. See Fucci v. Rudnick, 36 Conn. App. 938 (1994). Such facts do not justify the setting aside of the verdict.
The plaintiff also claims error because the court did not allow him to read his complaint to the jury. The court, at the beginning of the trial, advised the plaintiff that he could read his complaint to the jury as part of his opening statement but the plaintiff did not do so. During the plaintiff's presentation of evidence, in narrative form, the court did not allow the plaintiff to read his complaint to the jury on the grounds that the "direct examination" was the opportunity to present factual evidence and not the time to read the allegations of the complaint. The action of the trial court was correct.
Accordingly, the motion to set aside the verdict in favor of the defendants is hereby denied.
Rush, J. CT Page 1331-ZZZ